UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CORNEL MYERS, | : | |
|    *Plaintiff*, | : | 3:25-CV-763 (SVN) |
| | : | |
| v. | : | |
| | : | |
| ANGEL QUIROS, *et al.*, | : | January 20, 2026 |
|    *Defendants*. | : | |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Cornel Myers, a sentenced inmate[1] incarcerated at Cheshire Correctional Institution in the custody of the Connecticut Department of Correction ("DOC"), brought this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was housed at MacDougall-Walker Correctional Institution ("MacDougall"). *See* Compl., ECF No. 1. He names as Defendants Angel Quiros, the Commissioner of the DOC; W. Mulligan, the Deputy Commissioner of the DOC; Warden Guadarama; Deputy Warden Mangiafico; Captain Betances; Medical Provider Ewa; all employees of the DOC who worked at MacDougall at the time of the alleged constitutional violations; and John Dempsey Hospital (UConn). *Id*. at 2–3, 7. Plaintiff sues Defendants in their individual capacities and seeks compensatory and punitive damages, declaratory relief, and a preliminary and permanent injunction. *Id*. at 6, 8.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

---

[1] The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). Information on the Department of Correction website shows that Plaintiff was sentenced on January 13, 2023, to a term of fifty-seven years of imprisonment. *See* Inmate Information, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=411921 (last visited January 20, 2026).

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

The following allegations are set forth in the complaint in this action. The Court does not include herein all the allegations from the complaint but summarizes only those facts necessary to provide context for initial review. Relatedly, the Court treats the facts alleged in the complaint as true for purposes of initial review.

On September 16, 2024, Plaintiff "started a hunger strike, along with six other inmates, seeking adequate medical, mental health, and food for the betterment of incarcerated individuals. ECF No. 1 ¶ 10. After the sixth (refused) meal, Plaintiff and the other six inmates were threatened by correctional officer(s), who said: "Stay in your cells, get off the hunger strike[,] or else there will be consequences for your action(s) and you will all be d[i]vided, said Captain Betances." *Id*. ¶ 11. Plaintiff "refused to get off the hunger strike. . . ." *Id*. ¶ 12.

Shortly after Plaintiff did not comply with the officers' orders to get off the hungers strike, he was handcuffed and placed in a "filthy cell" within the restricted housing unit (segregation) unit. *Id*. ¶ 13. He states that this retaliatory action was taken by the DOC employees on September 18, 2024. *Id*. All of Plaintiff's privileges were revoked and all communications with his friends and loved ones were stopped against his will by officers and their supervisors "for no cause shown." *Id*. ¶ 14.

On September 22, 2024, Plaintiff fell unconscious while in segregation, and later that night, he woke up in the hospital, where he stayed until he was discharged on September 23, 2024. *Id*. ¶ 15. He seeks compensatory and punitive damages and declaratory and injunctive relief to ensure "that all inmates in the Connecticut DOC [a]re given equal and adequate medical and mental health treatment and adequate food." *Id*. at 6. He also seeks to have this Court prevent the DOC "from taking anymore retail[a]tory action . . . against [him]." *Id*. at 8.

## II.     LEGAL STANDARD

It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). But *pro se* litigants are still required to comply with the Federal Rules of Civil Procedure. *Eason v. Maletz*, No. 24-CV-1493 (VDO), 2024 WL 4814266, at *2 (D. Conn. Nov. 18, 2024) (citation omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotation marks and citation omitted). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original; quotation omitted).

Moreover, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and

3

conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## III.   DISCUSSION

Plaintiff states that he brings his claims under 42 U.S.C. § 1983 to redress the deprivation of his First, Eighth, and Fourteenth Amendment rights under the U.S. Constitution. ECF No. 1 ¶ 1. However, the mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision. *See e.g.*, *Harris v. Doe*, No. 24-CV-151 (MPS), 2024 WL 1344697, at *3 (D. Conn. Mar. 29, 2024). Here, Plaintiff fails specify the constitutional violations that he claims to have occurred under the First, Eighth or Fourteenth Amendment. Even so, when construed liberally, it appears Plaintiff is attempting to bring claims against Defendants for: (1) First Amendment retaliation; (2) Eighth Amendment conditions of confinement; (3) Eighth Amendment deliberate indifference to medical needs; and (4) violations of the Fourteenth Amendment Due Process clause pertaining to his placement in restrictive housing.

### A.  Personal Involvement

As an initial matter, Plaintiff has failed to allege the personal involvement of Defendants in the alleged constitutional violations.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the

elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Plaintiff has not alleged any facts in the body of his complaint about conduct by Defendants Quiros, Mulligan, Guadarama, Mangiafico, or Ewa.  As for Defendant Betances, Plaintiff alleges only that other correctional officers threatened Plaintiff and the other inmates, saying "[']Stay in your cells, get off the hunger strike[,] or else there will be consequences for your action(s) and you will all be d[i]vided,['] said Captain Betances."  ECF No. 1 ¶ 11. Plaintiff does not name these correctional officers, and it is not clear from this allegation whether Plaintiff was threatened by only correctional officers or by Defendant Betances as well. This allegation does not include enough context and clarification as to the individuals involved to state a claim for a constitutional violation.

Because Plaintiff has failed to address whether Defendants Quiros, Mulligan, Guadarama, Mangiafico, and Ewa were personally involved in any alleged constitutional violations, and has failed to provide the necessary context for the Court to determine whether Defendant Betances was personally involved in any alleged constitutional violations, Plaintiff may not proceed on any claim for monetary damages against these Defendants.

B.  Plaintiff's Claims

Aside from Plaintiff's failure to allege the personal involvement of Defendants in any constitutional violation, he also has not pleaded sufficient facts to state a claim for violations of his constitutional rights. The Court discusses Plaintiff's claims in turn.

*1. First Amendment Retaliation*

To the extent Plaintiff brings a First Amendment retaliation claim, he has not pleaded a plausible claim.  To state a retaliation claim, Plaintiff must allege facts demonstrating "(1) that the

5

speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal quotation marks and citations omitted). "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). "The test is objective, and the plaintiff is not required to show that he was actually deterred." *Id.* To allege causation, a plaintiff must plead facts plausibly showing that the protected conduct was a *but-for* cause of the adverse action—meaning that the action "would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)); *accord Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order).

Plaintiff claims that he went on a hunger strike seeking adequate medical, mental health care, and food. ECF No. 1 ¶ 10. He claims that correctional officers threatened him when he refused to stop the hunger strike, and as a result, he was placed in a filthy cell in the restricted housing unit and lost all his privileges. *Id.* ¶¶ 13–14. But Plaintiff has not provided the Court with enough context to evaluate this claim. For instance, he has not alleged which correctional officers threatened him, who placed him in a filthy cell, and who had the authority to revoke his privileges. And as discussed previously, Plaintiff has not provided enough context as to Defendant Betances' personal involvement for the Court to assess whether Plaintiff has a plausible First Amendment retaliation claim against him. Thus, Plaintiff has failed to plead a plausible First Amendment retaliation claim.

### 2.     *Eighth Amendment Conditions of Confinement*

Likewise, to the extent Plaintiff brings an Eighth conditions of confinement claim, he has not pleaded a plausible claim. The Eighth Amendment, which forbids cruel and unusual punishment, has been interpreted to prohibit conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The ban on cruel and unusual punishment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up).  An Eighth Amendment claim related to the conditions of an inmate's confinement, often referred to as a "deliberate indifference" claim, is comprised of objective and subjective elements. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Objectively, an inmate must be deprived of a "basic human need," or be subjected to a "substantial risk of serious harm" to health or safety.  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  To constitute an Eighth Amendment violation, a condition must be "sufficiently serious" such that it results in a deprivation of "the minimal civilized measure of life's necessities." *Id.* (citation omitted).  Conditions are objectively serious enough to implicate the Eighth Amendment where, alone or in combination, they produce "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The inquiry focuses on the severity and duration of the condition.  *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015); *see also, e.g., Hutto v. Finney,* 437 U.S. 678, 686–87 (1978), *abrogated on other grounds as recognized by Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 55 (2024).

For the subjective element, an inmate must show that defendants possessed culpable intent; that is, the defendants knew that the inmate faced a substantial risk to his health or safety and

7

disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. The defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. Allegations of "mere negligence" are insufficient to plead a deliberate indifference claim. *Id.* at 835.

Plaintiff's only allegation pertaining to his conditions of confinement is that "[he] was cuffed, [and] . . . placed in a filthy cell within the restricted housing unit (segregation). . . ." ECF No. 1 ¶ 13. It appears as if Plaintiff was taken to the restricted housing unit on September 18, 2024, *see id.*, and although Plaintiff states that he was taken to the hospital on September 22, 2024, and discharged the next day, *see id.* at 5 ¶ 15, it is not clear whether he was returned to the same cell in the restricted housing unit, and if so, how long he remained there. Furthermore, Plaintiff's sole description of the cell as filthy does not provide the Court with enough context to determine whether the condition was sufficiently serious to support a claim of constitutional violation. Lastly, even if Plaintiff could demonstrate that the condition was sufficiently serious, he has not alleged which Defendants placed him in the cell, whether he faced a substantial risk of harm, and if so, which Defendants knew that he faced a substantial risk of harm. Thus, Plaintiff has not pleaded a plausible Eighth Amendment conditions of confinement claim.

### 3. *Eighth Amendment Deliberate Indifference to Medical Needs*

Next, to the extent Plaintiff brings a claim for deliberate indifference to his medical needs under the Eighth Amendment, he has not pleaded a plausible claim.

As noted, the first element of an Eighth Amendment deliberate indifference claim is objective. As for a deliberate indifference claim pertaining to medical needs, the inmate must show that he was "actually deprived of adequate medical care" by an official's failure "to take reasonable measures in response to a [sufficiently serious] medical condition." *Id.* (quoting

*Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).  First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. In providing such care the medical providers are only required to have "act[ed] reasonably."  *Id.*  The second inquiry requires the court to determine whether the inadequacy in medical care is "sufficiently serious," which requires the court to examine "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280.  As noted previously noted, the second element of an Eighth Amendment deliberate indifference claim is subjective.  The inmate must show that the official acted with "subjective recklessness," such that the official "knew of and consciously disregarded an excessive risk to inmate health or safety." *Thomas v. Wolf,* 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *id.* at 279–80 and *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)) (cleaned up).

    Plaintiff's only allegation pertaining to a medical need is that, on September 22, 2024, he fell unconscious while in segregation, and later that night, he woke up in the hospital and stayed there until he was discharged.  ECF No. 1 ¶ 15.  This allegation does not provide enough context for the Court to assess whether Plaintiff had an objectively sufficiently serious medical need.  Plaintiff does not discuss whether he was deprived of adequate medical care, or any of the care he did or did not receive for that matter.  Nor does Plaintiff state whether there was any offending conduct, and if so, how that conduct was inadequate and what harm resulted.  Lastly, in the event Plaintiff could demonstrate he had a serious medical need, he does not name any Defendants that acted with subjective recklessness.  As such, Plaintiff has not pleaded an Eighth Amendment claim for deliberate indifference to medical needs.

*4. Fourteenth Amendment*

Finally, to the extent Plaintiff brings a Fourteenth Amendment Due Process claim pertaining to his placement in the restricted housing unit, he has not pleaded a plausible claim.

Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (*per curiam*). The Due Process Clause of the Fourteenth Amendment, in and of itself, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 228 (1976). Nevertheless, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement. *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In determining what constitutes an "atypical and significant hardship," courts consider "[b]oth the conditions [of confinement] and their duration . . . harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted).

The process due for an inmate facing restrictive segregation depends on whether the basis for the decision is administrative or punitive. *See Jusino v. Rinaldi*, No. 3:18-CV-2004 (MPS), 2019 WL 2720763, at *5–6 (D. Conn. June 27, 2019); *Fowler v. Dep't of Corr.*, No. 3:17-CV-848

(JAM), 2019 WL 1025243, at *5 (D. Conn. Mar. 4, 2019).  Where the inmate's detention in restrictive confinement is administrative, his confinement is assessed pursuant to the standard set forth in *Hewitt v. Helms*, 459 U.S. 460 (1983).  *See Jusino*, 2019 WL 2720763, at *6.  Under *Hewitt*, the inmate must receive "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation."  *Hewitt*, 459 U.S. at 476.  To satisfy due process, the non-adversary proceeding must occur "within a reasonable time following the inmate's transfer to administrative segregation," and the decisionmaker must review the charges and then-available evidence against the inmate.  *Jusino*, 2019 WL 2720763, at *6.

Where the placement in restrictive confinement was disciplinary in nature, the inmate is entitled to more procedural protections under *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 572 (1974).  These protections include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense; and (3) a written statement explaining the decision and the reasons for the action being taken.  *Id.*

Lastly, the Supreme Court has made clear that, in order to "meet the minimum requirements of procedural due process," a prison hearing officer's finding must be supported by "some evidence."  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (applying the "some evidence" standard to an administrative proceeding).  This standard is very lenient, as "any evidence in the record that could support the conclusion" reached by the decisionmaker will suffice.  *Superintendent*, 472 U.S. at 455–56.

Here, Plaintiff's only allegation relating to his placement in the restricting housing unit is that he was placed there because he refused to end his hunger strike.  ECF No. 1 ¶¶ 12–13.  To the

11

extent Plaintiff intended to bring a Fourteenth Amendment Due Process claim, he has not described his conditions of confinement or how long he was in restrictive housing. This information is necessary for the Court to determine whether Plaintiff was deprived of a liberty interest, so that the Court can assess whether to proceed to the next step of the analysis—whether the procedures followed by the State were constitutionally sufficient. And assuming Plaintiff had a liberty interest, he has not provided any details as to the procedures used to determine his restrictive status for the Court to assess whether they were constitutionally sufficient. Thus, Plaintiff has not pleaded a plausible claim.

### C. Plaintiff's Request for Injunctive & Declaratory Relief

Plaintiff states that he only sues Defendants in their individual capacities, but he also seeks injunctive and declaratory relief. Claims for injunctive relief may not be asserted against defendants in their individual capacities because they would not have the authority to provide such relief in those capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, No. 3:18-CV-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). Instead, claims for injunctive or declaratory relief must be asserted against defendants in their official capacity. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011).

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See id.* at 254–55 (citing *Ex parte Young*, 209 U.S. 123 (1908)). But as Plaintiff is no longer housed at MacDougall, his requests for injunctive and declaratory relief against Defendants Guadarama, Mangiafico, Betances, and Ewa, who allegedly all work or worked at MacDougall, are moot. *See Salahuddin,* 467 F.3d at 272 (an inmate's transfer from a correctional facility generally moots

claims for declaratory and injunctive relief against officials at that facility).  And because Plaintiff has failed to plead an ongoing constitutional violation, he has not pleaded a plausible claim for injunctive relief against Defendants Quiros and Mulligan in their official capacities. Lastly, to the extent Plaintiff intends to assert official capacity claims for monetary damages against Defendants (all state employees), such claims are barred by the Eleventh Amendment.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

### D.  Defendant UConn John Dempsey Hospital

Plaintiff names as a Defendant John Dempsey Hospital, which he alleges is a division of the University of Connecticut Hospital.  But "[i]t is well-settled that a state agency is not a 'person' within the meaning of section 1983."  *Stewart v. John Dempsey Hosp.*, No. 303CV1703WWE, 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (dismissing John Dempsey Hospital as a defendant because John Dempsey Hospital "is not a person within the meaning of section 1983"); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state and state agency are not persons within the meaning of section 1983); *Siminausky v. Starkowski*, No. 3:15-CV-159 (VLB), 2016 WL 236208, at *6 (D. Conn. Jan. 20, 2016) (dismissing claims against UConn Health because UConn Health is not a person within the meaning of section 1983). Plaintiff alleges John Dempsey Hospital is a part of the University of Connecticut Medical Center. Thus, Plaintiff cannot proceed under section 1983 against this Defendant because this entity is a state agency and is not considered to be a person subject to suit under 42 U.S.C. § 1983. Accordingly, all claims against UConn John Dempsey Hospital are dismissed pursuant to § 1915A.

## IV.  ORDERS

Based on the foregoing, the Court DISMISSES the Complaint without prejudice for failure to allege the personal involvement of any Defendants in the alleged constitutional violations and

for failure to state a plausible claim for relief under 42 U.S.C. § 1983.

If Plaintiff wishes to replead his claims that have been dismissed above without prejudice, in order to attempt to state a viable claim, he may file an Amended Complaint by **February 19, 2026**. **An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If plaintiff does not file an Amended Complaint, on or before **February 19, 2026**, the Court will direct the clerk to close this case.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) 2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**SO ORDERED** at Hartford, Connecticut, this 20th day of January, 2026.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE